UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────

**UNITED STATES OF AMERICA,**
    **Plaintiff**

v.                                              Case No. 22-CR-133

**RAMONE J. LOCKE, SR.**
    **Defendant**
───────────────────────────────────────────────

## DECISION AND ORDER

Defendant Ramone Locke filed a motion to suppress the fruits of a search warrant, arguing that the warrant application failed to establish probable cause, along with a request for a <u>Franks</u> hearing, arguing that the warrant affidavit contained a misleading statement. The magistrate judge handling pre-trial proceedings denied the request for a hearing, then issued a recommendation that the motion be denied. Defendant objects. I review the recommendation de novo, Fed. R. Crim. P. 59(b), and the denial of a hearing for clear error, Fed. R. Crim. 59(a). <u>See</u> <u>United States v. Lewis</u>, 386 F. Supp. 3d 963, 979 (E.D. Wis. 2019). For the reasons that follow, I adopt the recommendation and deny defendant's motion.

### I. BACKGROUND

The magistrate judge's report and recommendation sets forth the background of the case in detail. I present an abridged version herein.

In August 2021 law enforcement began investigating Alex Weddle and his drug trafficking organization (DTO). The investigation included controlled buys by an undercover officer (UCO) from Weddle and his associates. The investigation further

1

revealed that the DTO used several phones, including one with a number ending in 7500, which was also used by Weddle himself.

During a February 22, 2022 meeting between Weddle and the UCO, Weddle "advised [the UCO] to get an iPhone." Weddle stated, "in substance, that he and his ADTO exclusively utilized iPhones because they communicate on FaceTime. [The UCO knew] through training and experience that using the iPhones FaceTime and iMessage to communicate can assist in evading law enforcement." (R. 85-1 [Warrant Aff.] ¶ 97.)

Pursuant to a judicially authorized search of iCloud records for the 7500 number, law enforcement identified 15 numbers involved in FaceTime calls with the 7500 number. In examining the top-five most contacted numbers, law enforcement determined that four were associated with the DTO; the fifth (ending in 7810) belonged to defendant Locke. Specifically, defendant's phone made 15 FaceTime contacts with the 7500 number during the three-week period covered by the search.

Law enforcement looked into defendant's criminal history, discovering prior convictions for drug trafficking and related offenses, including a 2012 federal money laundering conviction and a 2020 federal conviction for use of a communication device to facilitate drug trafficking. Officers also determined that defendant communicated with his son using the 7810 number after the son's March 30, 2022 arrest for suspected drug activity. Officers listened to a recording of the call, during which the two men discussed getting "the stuff" was out of the car and whether a suspected accomplice would talk to the police. Officers understood defendant's questions about the accomplice as indicative of concern that the accomplice would make statements incriminating defendant, his son, or other possible members of the DTO.

On April 8, 2022, law enforcement applied for a warrant authorizing surveillance of defendant's phone. In seeking to explain the significance of the iCloud information, the affiant stated: "It is important to note that when [the UCO] met with [Weddle] on February 22, 2022, [Weddle] informed [the UCO] that he communicated with his cocaine source via FaceTime." (R. 85-1 ¶ 113.) Magistrate Judge Dries issued the warrant, and the location data obtained suggested that defendant may have supplied Weddle with cocaine prior to an April 22 contact with the UCO. Law enforcement obtained additional warrants on May 10, May 18, and June 3, one of which authorized the tracking of defendant's car. Using the tracking information, on June 7, 2022, law enforcement conducted a traffic stop as defendant traveled from Chicago into Wisconsin and, following a K-9 alert, searched the car and located two kilograms of cocaine.[1]

## II. DISCUSSION

### A. Probable Cause

Probable cause for the issuance of a search warrant exists if there is a fair probability that contraband or evidence of a crime will be uncovered by the proposed search. United States v. Harris, 996 F.3d 451, 460 (7th Cir. 2021). The issuing judge's finding of probable cause carries a strong presumption of correctness, and the task of a reviewing court is simply to ensure that the judge had a substantial basis for concluding that probable cause existed. Id. at 461. The task of the issuing judge is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238 (1983). Direct evidence

---

[1] Defendant has also challenged the car search, which I address in a separate order.

is not required; rather, the issuing judge may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and the suspected offense. United States v. Zamudio, 909 F.3d 172, 175 (7th Cir. 2018). The judge may also consider the target's prior record in interpreting other details in the affidavit. United States v. McDuffy, 636 F.3d 361, 364 (7th Cir. 2011).

If the defendant establishes the invalidity of the warrant, the reviewing court must then determine whether the executing officers could have relied in good faith on the issuing judge's probable cause determination. United States v. Hueston, 90 F.4th 897, 903-04 (7th Cir. 2024). The decision to obtain a warrant creates a presumption that the officer acted in good faith, which may be rebutted by demonstrating that the issuing judge abandoned his neutral and detached role, that the officer was dishonest or reckless in preparing the affidavit, or that the affidavit was so lacking in probable cause that no officer could have reasonably relied on it. Id. at 904.

Before the magistrate judge, defendant argued that the April 8 warrant application failed to establish probable cause that he was Weddle's supplier. The magistrate judge responded that the correct question is not whether defendant occupied any particular role in the DTO but rather whether the proposed search would uncover evidence of illegal activity. Citing the affidavit's averments that defendant communicated with a known drug trafficker on a medium generally used to evade law enforcement and specifically used by the target DTO; that defendant was one of the top five communicators with Weddle on that medium, the other four being known drug numbers within the DTO; that defendant had a significant history of drug activity, which undercut any innocent explanation for the contacts; and that defendant also communicated with his recently arrested son on the

4

target phone, in a manner demonstrating concern for his own exposure, the magistrate judge found that probable cause existed. (R. 105 at 8-13.)

Defendant objects that the recommendation ignores the fact that the affidavit purported to show he was Weddle's supplier, not that he played some other role in the DTO. (R. 150 at 12-13.) However, defendant cites no authority for the proposition that this alters the familiar probable cause standards the recommendation applied.[2]

Regardless, defendant argues the affidavit failed to link him to Weddle's drug activity in *any* way. He specifically takes aim at the recommendation's conclusions that FaceTime is generally used to evade law enforcement, that Weddle used the 7500 phone number specifically for his drug activities, and that Weddle's group communicated only by FaceTime. (R. 150 at 12-13.) He concludes that, when these inaccurate characterizations not contained within the four corners of the affidavit are stripped away, all that is left are FaceTime calls and his criminal record. (R. 150 at 15.)

Defendant first contends that FaceTime is not "known generally" to be used to evade law enforcement, as the recommendation said. He notes that millions of people use the iPhone (and its FaceTime and iMessage functions) to communicate for legitimate purposes. (R. 150 at 13-14; R. 158 at 2-3.) Defendant takes this comment out of context. (R. 105 at 8, "In short, Locke was communicating with a known drug dealer on a medium known *generally* to be used for evading law enforcement and *specifically* to be used by

---

[2] It is worth noting that the affidavit's concluding paragraph averred that the requested information would be relevant to show whether Weddle, other identified members of the DTO, defendant, and other unidentified subjects "acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns." (R. 85-1 ¶ 134.) In other words, the affidavit was not solely focused on establishing that defendant was the supplier.

5

that dealer's own organization.".) The recommendation was not suggesting that all of the nation's iPhone users are suspected criminals. More importantly, the warrant affidavit provided a proper foundation for the recommendation's conclusion. Weddle told the UCO, "in substance, that he and his ADTO exclusively utilized iPhones because they communicate on FaceTime." (R. 85-1 ¶ 97.) The affidavit further stated that the UCO knew "through training and experience that using the iPhones FaceTime and iMessage to communicate can assist in evading law enforcement." (R. 85-1 ¶ 97.) Finally, the affidavit stated that "case agents have learned the ADTO uses iPhones communicating with each other on FaceTime or iMessage in attempts to evade law enforcement surveillance tactics." (R. 85-1 ¶ 12.)

Defendant next argues that there is no information in the affidavit that Weddle used the 7500 number only for drug activities; to the contrary, the evidence established that he used it to communicate with his girlfriend. (R. 150 at 14; R. 158 at 3.) The problem with this argument is that defendant's girlfriend (and now co-defendant), Janicia Mack-Howard, is listed in the affidavit as a participant in the DTO. (R. 85-1 ¶¶ 11, 76, 115; R. 105 at 10.)

Finally, defendant contends there is no basis for concluding the DTO only used FaceTime to communicate; the group also used regular voice calls and text messages to communicate. (R. 150 at 13-14; R. 158 at 3.) Again, a common sense reading of the affidavit supports the recommendation's finding. Weddle told the UCO that he and his DTO "exclusively utilized iPhones because they communicate on FaceTime." (R. 85-1 ¶ 97.) As the recommendation explained, the DTO chose this medium because it helped avoid detection, defendant was one of the most frequent communicators with Weddle

6

over FaceTime during the operative period, and the other top-five FaceTime contacts were all associated with the DTO.

As part of his summary of the recommendation, defendant objects to the reliance on his criminal history and the call with his son. (R. 150 at 11.) However, he develops no argument as to how this reliance was improper. See United States v. Elst, 579 F.3d 740, 747 (7th Cir. 2009) (noting that perfunctory and undeveloped arguments are waived). In any event, as the government notes in its response, prior convictions are relevant and entitled to some weight in the probable cause context, and the recorded call (made on the same phone law enforcement proposed to track) suggested defendant was concerned about his own exposure based on his son's arrest. (R. 154 at 20-21.) In reply, defendant attempts to distinguish the criminal history case cited by the government, but he again develops no argument that consideration of his record to give context to the calls was improper in this case. (R. 158 at 4.) Defendant also argues in reply that any suggestion that the call with his son implied criminal involvement is mere speculation, but he again develops no argument that it was improper to consider the call as part of the analysis. (R. 158 at 4.)

In sum, reviewing the matter de novo, I agree with the recommendation: the affidavit provided a substantial basis for concluding that probable cause existed.

**B.    Franks**

Because the ability of a neutral and detached magistrate judge to determine probable cause depends on the accuracy of the information the police submit, a search warrant is not valid if the police obtain it by deliberately or recklessly presenting false, material information, or by omitting material information from the affidavit provided to the

7

Case 2:22-cr-00133-LA    Filed 03/19/24    Page 7 of 14    Document 159

issuing judge. Hueston, 90 F.4th at 902. If a defendant can make a "substantial preliminary showing" of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth, the defendant is entitled to a hearing under Franks v. Delaware to determine whether the court should suppress evidence obtained under the search warrant. Id. The court will suppress evidence seized during a search when the defendant shows by a preponderance of the evidence that (1) the affidavit in support of the warrant contains false statements or misleading omissions, (2) the false statements or omissions were made deliberately or with reckless disregard for the truth, and (3) probable cause would not have existed without the false statements and/or omissions. Id.

Before the magistrate judge, defendant primarily argued that the officer-affiant misrepresented the facts in making the following statement: "It is important to note that when [the UCO] met with [Weddle] on February 22, 2022, [Weddle] informed [the UCO] that he communicated with his cocaine source via FaceTime." (R. 85-1 ¶ 113.) According to a recording of the February 22 meeting, Weddle actually stated, "me and my people do business off iPhone because when you FaceTime, they can't get you bro, they can't get you. You can talk about whatever. You can say whatever they can't get you, they can't tap a FaceTime." (R. 82 at 5; R. 150 at 3.)

The magistrate judge acknowledged that Weddle never specifically said he used FaceTime to communicate with his "source." But he did say "my people do business off iPhone," and the magistrate judge found it a fair inference that the DTO's supplier would be one of Weddle's "people." (R. 105 at 14.) "That the affiant inferred the specific

statement from the more general one does not render the statement false." (R. 105 at 15.)

In his objections, defendant contends that the Fourth Amendment requires such inferences be drawn by the issuing judge, not the officer. (R. 150 at 15, citing Johnson v. United States, 333 U.S. 10, 13-14 (1948).) But the issue in Johnson was whether the police could dispense with a warrant simply because they possessed evidence upon which a magistrate might have inferred the existence of probable cause. 333 U.S. at 13. The issue here is whether the officer-affiant deliberately or recklessly made a false statement in applying for a warrant. In this context, courts have noted that "the defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts. Rather, there must be evidence showing that the statements at issue are objectively false." United States v. Moody, 931 F.3d 366, 370 (4th Cir. 2019); see also United States v. Hare, 772 F.2d 139, 141 (5th Cir. 1985) ("A statement in a warrant affidavit is not false merely because it summarizes or characterizes the facts in a particular way."). Moreover, because the affiant's state of mind is at issue in the Franks context, see United States v. Daniels, 906 F.3d 673, 677 (7th Cir. 2018) ("What is needed is direct evidence of the affiant's state of mind or else circumstantial evidence of a subjective intent to deceive.") (internal quote marks omitted), courts have held that defendant must make a showing that the affiant's characterization of the underlying evidence was "intentionally misleading." E.g., United States v. Prideaux-Wentz, 554 F.3d 954, 962 (7th Cir. 2008); see also United States v. Anderson, No. 1:23-CR-9-HAB, 2024 U.S. Dist. LEXIS 2641, at *18, *26 (N.D. Ind. Jan. 5, 2024) (drawing a distinction between falsely or recklessly stated

facts and reasonable interpretations of observed conduct based on training and experience).

Defendant further references the cases cited in his reply brief before the magistrate judge, in which courts granted <u>Franks</u> hearings where the officer-affiant appeared to mischaracterize audio or video recordings. (R. 150 at 16.) But in those cases, the reviewing courts, presented with the underlying evidence, simply could not see or hear what the affiant claimed (e.g., a particular vehicle, matching clothing, reference to a specific property). The courts therefore granted hearings to determine whether the officers sought to intentionally or recklessly mislead the issuing judges by including the challenged information. Here, defendant fails to make a substantial preliminary showing that a false statement, made deliberately or with reckless disregard for the truth, was included in the affidavit.

In the objections reply, defendant argues that the magistrate judge clearly erred in denying a hearing, reiterating his argument that the affidavit asserted that Weddle communicated with his supplier via FaceTime as a fact, not an inference. He accuses the affiant of highlighting it as such, knowingly or recklessly disregarding its truth. But it is impossible to conclude that the magistrate judge clearly erred in disagreeing that this single reference, in a 67-page affidavit, suggested the necessary state of mind.

The magistrate judge went on to conclude that, even if the challenged statement were untrue, it would not defeat probable cause because defendant's argument again rested on the flawed premise that his status as the "source" was critical to the probable cause determination. As the magistrate judge noted, the affidavit merely needed to show that defendant was involved in drug trafficking, not that he occupied some specific role

within the DTO. Thus, excising the statement about the "source" in ¶ 113 would not, the judge concluded, impact probable cause. (R. 105 at 15.) Defendant does in his objections address this alternative finding on the Franks issue.

In his objections reply, defendant argues the court could rule in his favor without holding a hearing. He contends that, to the minimal extent the affidavit established probable cause, that case hinged on the affidavit's claim that he was Weddle's drug source; if the false statement is excluded, probable cause disappears. (R. 158 at 5.) But this argument again overlooks the magistrate judge's finding that the affidavit needed only to show defendant's involvement in drug trafficking, not his specific role within the DTO. Defendant also fails to explain how the court could make the required finding on the affiant's state of mind on this record.

Before the magistrate judge, defendant also argued that the April 8 affidavit omitted certain material information: (1) that, according to records, the FaceTime calls between defendant and the 7500 number lasted "zero seconds," supporting an inference that the calls never connected; (2) that records showed only three phone contacts between defendant and the 7500 number before the February FaceTime period, undermining the notion that he had been supplying Weddle; and (3) that there were other numbers in frequent contact with Weddle police did not target as belonging to the putative supplier. The magistrate judge responded that defendant failed to provide evidentiary support for these factual assertions, that defendant provided no evidence from which the court could infer such information was deliberately or recklessly omitted, and that nothing in the record suggested the omitted information was material to probable cause. The magistrate judge further noted that the government had presented evidence—a declaration from a

11

technical expert—that Apple does not keep records of call times, meaning the "zero seconds" length of the calls does not mean they actually lasted zero seconds; thus, the affidavit did not omit material information. Finally, the magistrate judge concluded that there was no need to mention the paucity of phone calls prior to February 2022 because the contact that was specifically relevant was the FaceTime contact. (R. 105 at 15-18.)

In his objections, defendant contends that, while he did not provide evidence in support of his assertions, they related to matters that were not in dispute, based on objective facts taken from the discovery. (R. 150 at 16.) He nevertheless appends an exhibit to the objections reflecting analysis of the phone records. (R. 150-1.) Defendant also takes issue with the government's submission of an affidavit regarding technical issues with FaceTime, as this information fell outside the scope of the warrant application. (R. 150 at 16-17.) Finally, defendant states that the larger set of Weddle's phone tolls (including those from before the February 1 to February 22 period) do not distinguish FaceTime contacts from other phone contacts, which undermines the recommendation's focus on the FaceTime only contacts. (R. 150 at 18.) He concludes that, when compared to Weddle's contacts with other people he communicated with by FaceTime, Weddle's lack of pre-February contacts with defendant undermines the idea that defendant had been supplying Weddle. (R. 150 at 19.)

As the government notes in its response, the defendant bears the burden of demonstrating the need for a <u>Franks</u> hearing. (R. 154 at 25.) And because this burden is substantial, such hearings are rarely required. <u>United States v. Johnson</u>, 580 F.3d 666, 670 (7th Cir. 2009). The magistrate judge did not clearly err by holding defendant to his burden here. In any event, as the government also notes, it is impossible on this record

12

to infer that the officer-affiant omitted this information recklessly or with subjective intent to deceive. Nor does defendant provide any authority showing that it was improper for the magistrate judge to consider the affidavit regarding FaceTime technical issues.

Finally, defendant argued before the magistrate judge that the warrants issued on May 10, May 18, and June 3 were also invalid. He conceded that his challenge to the May 10 warrant relied on invalidating the April 8 warrant. However, he argued that the later warrant affidavits also omitted material information. Specifically, those affidavits discussed an April 28 controlled buy of a kilogram of cocaine, in which Weddle apparently "shorted" the UCO. On April 29, Weddle (using a number ending in 7363) and the UCO discussed the shortage, with Weddle promising to call his supplier; a few minutes later Weddle contacted defendant by FaceTime, then texted the UCO that he had spoken to his source. The affidavits indicated Weddle did not make or receive any other calls using the 7363 number during this time period. However, defendant noted that other phones Weddle used did make or receive calls during that time, suggesting that the contact with the supplier could have been in one of those other calls. The magistrate judge responded that defendant presented no evidence that Weddle personally made these calls on the DTO phones, which were also used by others. In any event, the claim of materiality again relied on the flawed premise that the affidavits would be sufficient only if they showed defendant to be the source of the drugs, rather than a participant in the DTO. (R. 105 at 18-19.) Defendant does not specifically object to this aspect of the recommendation, which I find sound and well-reasoned.

In sum, I find no clear error in the magistrate judge's denial of a <u>Franks</u> hearing. Defendant fails to make a substantial preliminary showing that a false statement

13

knowingly or intentionally, or with reckless disregard for the truth, was included in the warrant affidavit.

* * *

Having concluded that the affiant did not misstate or omit any material facts, the magistrate judge concluded that the good faith exception would apply, even if probable cause was lacking. (R. 105 at 19.) Defendant in his objections develops no argument that good faith would not apply, absent the finding of a Franks violation. For this reason as well, defendant's motion to suppress must be denied.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 106) is adopted, and defendant's motion to suppress (R. 82) is denied.

Dated at Milwaukee, Wisconsin, this 19th day of March, 2024.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge